IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAWN FLORES, et al.,

                Plaintiffs,

v.                              CIVIL ACTION NO.  2:14-cv-24748

ETHICON, INC., et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER
(Defendants' Motion to Dismiss and Motion for Hearing)

Pending before the court are the Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted Pursuant to FRCP 12(b)(6) [ECF No. 38] and the Motion for Hearing on the Motion to Dismiss First Amended Complaint [ECF No. 42], both filed by defendants Dignity Health and St. Mary Medical Center. The motions are ripe for consideration because the briefing is complete. For the reasons set forth below, the Motion to Dismiss [ECF No. 38] is **GRANTED**, and the Motion for Hearing [ECF No. 42] is **DENIED**.

### I.  Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("JPML") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the

six remaining MDLs, there are more than 16,000 cases currently pending, approximately 10,000 of which are in the Ethicon MDL, MDL 2327. In this particular case, Dawn Flores and her husband Alfred E. Flores allege that Mrs. Flores suffered injuries after being implanted with a synthetic mesh product manufactured by Ethicon, Inc. and Johnson & Johnson (collectively, "the Ethicon defendants").

On December 29, 2003, Dr. Steven A. Scheuer implanted Mrs. Flores with the Gynecare TVT Device at St. Mary Medical Center in Long Beach, California. Plaintiff Fact Sheet ("PFS") 5 [ECF No. 44-1]. On July 21, 2011, the TVT Device was removed. First Am. Compl. ¶ 16 [ECF No. 18-3]. Mrs. Flores alleges that, at that time, "the TVT Device had eroded into adjacent pelvic organs causing infection, hematuria and necrosis resulting in substantial pain, suffering emotional and mental distress." *Id.*

### A. *Flores I*

On March 14, 2012, the plaintiffs filed a Complaint in the Los Angeles Superior Court against the Ethicon defendants, Dignity Health, St. Mary Medical Center, Dr. Steven A. Scheuer, Greater Long Beach Genito-Urinary Medical Group, Inc., and Does 1 to 100, inclusive. Compl. ¶¶ 3–9 [ECF No. 1-1], *Flores v. Ethicon, Inc.* ("*Flores I*"), No. 2:12-cv-01804. The Complaint alleged the following causes of action: I) negligence; II) strict liability – design defect; III) strict liability – manufacturing defect; IV) strict liability – failure to warn; V) breach of express warranty; VI) breach of implied warranty; VII) loss of consortium; and VIII) exemplary and punitive damages. *Id.* ¶¶ 17–55. Counts I, IV, VI, and VII were pled against all defendants, while the remaining counts were pled only against the Ethicon defendants and the

2

Doe defendants. Pls.' Reply to Defs.' Resp. in Opp'n to Mot. to Remand 5 [ECF No. 27], *Flores I*, No. 2:12-cv-01804. All defendants except the Ethicon defendants and the Doe defendants are healthcare providers (hereinafter, "the healthcare defendants"). The healthcare defendants are all residents of California. Notice of Removal 2 [ECF No. 1], *Flores I*, No. 2:12-cv-01804.

On May 12, 2012, the Ethicon defendants removed the case to the Central District of California on the basis of diversity jurisdiction, alleging that the nondiverse healthcare defendants were fraudulently joined. *Id.* at 1–2. On May 31, 2012, the JPML transferred the case to MDL 2327 in the Southern District of West Virginia and assigned to me. Conditional Transfer Order [ECF No. 20], *Flores I*, No. 2:12-cv-01804.

On May 24, 2012, the plaintiffs filed a motion to remand to state court. [ECF No. 13], *Flores I*, No. 2:12-cv-01804. On April 10, 2013, I entered a Memorandum Opinion and Order denying the motion to remand. [ECF No. 41], *Flores I*, No. 2:12-cv-01804. In the Order, I found "that there is no possibility that the plaintiffs can establish a cause of action against the healthcare defendants. Therefore, I [found] that the healthcare defendants were fraudulently joined." *Id.* at 14.

On December 28, 2012, Ethicon filed a motion to dismiss the plaintiffs' case with prejudice for their failure to timely provide a Plaintiff Profile Form ("PPF") pursuant to Pretrial Order ("PTO") # 17. [ECF No. 36], *Flores I*, No. 2:12-cv-01804. On May 20, 2013, I entered an Order granting Ethicon's motion to the extent that it

sought dismissal of the plaintiffs' case, but denying the motion to the extent that it sought dismissal with prejudice. [ECF No. 42], *Flores I*, No. 2:12-cv-01804.

The plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit. Notice of Appeal [ECF No. 48], *Flores I*, No. 2:12-cv-01804. On March 28, 2014, the Fourth Circuit issued an unpublished opinion affirming this court's orders denying the motion to remand and dismissing the case without prejudice. [ECF No. 52], *Flores I*, No. 2:12-cv-01804. The only theory of liability against the healthcare defendants that the plaintiffs maintained on appeal was negligent failure to warn. *Id.* at 9. The Fourth Circuit held that "there is no possibility that [the plaintiffs] could prevail in state court against the [healthcare] defendants on [their] claim of negligent failure to warn." *Id.* at 11. Therefore, the Fourth Circuit affirmed this court's denial of the plaintiffs' motion to remand. *Id.* In addition, the Fourth Circuit held that this court did not abuse its discretion by dismissing the case in accordance with the procedures set forth in PTO # 17. *Id.* at 13. Therefore, the Fourth Circuit affirmed this court's dismissal of the plaintiffs' case without prejudice. *Id.*

### B. *Flores II*

On June 26, 2013, the plaintiffs filed the instant case in the Los Angeles Superior Court, alleging the same eight counts as those in *Flores I* against the Ethicon defendants only. On July 3, 2013, the plaintiffs amended their Complaint, adding the healthcare defendants as defendants. First Am. Compl. ¶¶ 5–8 [ECF No. 18-3], *Flores v. Ethicon, Inc.* ("*Flores II*"), No. 2:14-cv-24748. The plaintiffs allege negligence (Count I), negligent misrepresentation (Count II), and loss of consortium

(Count VIII) against all defendants; the remaining counts are alleged against the Ethicon defendants only. Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. 7 [ECF No. 40], *Flores II*, No. 2:14-cv-24748.

On May 1, 2014, the Ethicon defendants removed this case to the Central District of California on the basis of diversity jurisdiction, alleging that the nondiverse healthcare defendants were fraudulently joined. Notice of Removal 1–2 [ECF No. 1], *Flores II*, No. 2:14-cv-24748. On May 14, 2014, the Ethicon defendants filed a Motion to Stay Pending Transfer by the JPML. [ECF No. 17], *Flores II*, No. 2:14-cv-24748. On May 15, 2014, the plaintiffs filed a Motion for Order Remanding Action to State Court. [ECF No. 18], *Flores II*, No. 2:14-cv-24748. On July 2, 2014, the Central District of California entered an order granting the Ethicon defendants' motion to stay, and denying as moot the plaintiffs' motion to remand. [ECF No. 30], *Flores II*, No. 2:14-cv-24748. On August 14, 2014, this case was transferred to MDL 2327 in the Southern District of West Virginia and assigned to me. Transfer Order [ECF No. 32], *Flores II*, No. 2:14-cv-24748.

On May 12, 2015, Dignity Health and St. Mary Medical Center (collectively, "Dignity Health") filed the presently pending Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted Pursuant to FRCP 12(b)(6) ("Motion to Dismiss"). [ECF No. 38], *Flores II*, No. 2:14-cv-24748. In support of the Motion, Dignity Health asserts that the healthcare defendants are

fraudulently joined,[1] and that the plaintiffs' Complaint is barred by California's applicable statute of limitations. Defs.' Mem. in Supp. of Def.'s Mot. to Dismiss 8–20 [ECF No. 39], *Flores II*, No. 2:14-cv-24748.

In response, the plaintiffs assert that the First Amended Complaint in this case "cures the . . . deficiencies expressed by this Court" in *Flores I*. Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. 7. Furthermore, the plaintiffs assert that the doctrine of collateral estoppel does not apply to this court's previous ruling that the healthcare defendants were fraudulently joined because the prior action was dismissed without prejudice. *Id.* at 7–10. However, the plaintiffs do not directly address Dignity Health's assertion that they have been fraudulently joined in the present case. *See generally id.* Instead, the plaintiffs argue that the distinct doctrine of fraudulent *misjoinder* does not apply to this case (even though Dignity Health has not argued that it does). *Id.* at 11–13. The plaintiffs also argue that their Complaint is not time-barred because the applicable statute of limitations was equitably tolled during the pendency of the *Flores I* case. *Id.* at 13–17.

## II.  Legal Standard

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions. In MDL cases such as this, the choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When

---

[1] On May 18, 2018, the plaintiffs voluntarily dismissed defendant Dr. Steven A. Scheuer. [ECF No. 55]. Thus, as of the date of this Order, the remaining healthcare defendants are Dignity Health/St. Mary Medical Center and Greater Long Beach Genito-Urinary Medical Group, Inc.

considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted); *see Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005) (applying Connecticut state law in transferred MDL case based on diversity jurisdiction (citing *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d at 1055)); *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *see also* 15 Charles A. Wright et al., *Federal Practice and Procedure*, § 3866 (3d ed. 2009).

The Honorable Shira A. Scheindlin has made a similar observation that the law of the transferee circuit applies:

> [C]ourts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed.

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007). Judge Scheindlin's observation, as noted in her opinion, reflects the general approach. *See, e.g.*, *In re Linerboard Antitrust Litig.*, MDL No. 1261, Civ.A.04-4001, 2005 WL 1625040, at *4 (E.D. Pa. July 11, 2005) (applying the law of the Third Circuit on a motion to dismiss for lack of subject matter jurisdiction); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003) (applying the law of the Seventh Circuit on a motion for remand to state court). Because this is a case based on diversity jurisdiction, federal law controls procedural issues and state law controls substantive issues. Therefore, I will use the

Fourth Circuit's standards for fraudulent joinder, and California's law on the statute of limitations.

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Removal based on diversity jurisdiction requires complete diversity of all parties. 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). No party involved in a diversity suit may share common citizenship with any party on the other side. *Strawbridge*, 7 U.S. at 267. However, the judicially-created "fraudulent joinder" doctrine provides an exception to the complete diversity requirement. This doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

To establish that a defendant has been fraudulently joined, "the removing party must establish either: [(1)] [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [(2)] [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (internal quotation marks omitted). The burden of showing no possibility of relief is heavy. The removing party "must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232–33. As the Fourth Circuit has recognized, the fraudulent joinder

standard is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes*, 198 F.3d at 464 (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). In addition, the court may, but is not required to, consider the entire record when determining whether there is a basis for joinder of the nondiverse defendants. *Hartley*, 187 F.3d at 426.

## III.    Discussion

Although titled as a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to FRCP 12(b)(6), the basis of Dignity Health's Motion to Dismiss is fraudulent joinder. Therefore, I will evaluate Dignity Health's Motion to Dismiss under the more plaintiff-favorable fraudulent joinder standard, rather than the 12(b)(6) standard for dismissing a complaint.

### A. *Collateral Estoppel*

In *Flores I*, I determined that there was no possibility that the plaintiffs could establish a cause of action against the healthcare defendants, and therefore they had been fraudulently joined. The Fourth Circuit affirmed this determination on appeal. Here, I **FIND** that the doctrine of collateral estoppel applies to the issue of whether the healthcare defendants have been fraudulently joined, such that the plaintiffs are barred from relitigating that issue here.

> Collateral estoppel or issue preclusion forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987). For this doctrine to apply, the party asserting it must establish five elements:

(1)    the issue precluded must be identical to one previously litigated;

(2)    the issue must have been actually determined in the prior proceeding;

(3)    determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;

(4)    the prior judgment must be final and valid; and

(5)    the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Ramsay v. I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994) (alteration in original).

In this case, the plaintiffs argue that Dignity Health has failed to establish elements (1) and (4) listed above.[2] Specifically, they argue that "[t]he facts and issues presented in this Motion are substantially, if not completely, dissimilar" from those addressed in my Order denying the Motion to Remand in *Flores I*. Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. 8. Furthermore, the plaintiffs argue that collateral estoppel does not apply to my prior determination of fraudulent joinder because "there has been no 'valid and final Judgment' entered in either *Flores I* or *Flores II*." *Id.* In other words, they argue that "collateral estoppel does not apply to a dismissal without prejudice." *Id.* at 7.

As noted above, "[f]or collateral estoppel to apply, 'the issue precluded must be identical to [the] one previously litigated.'" *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 364 (4th Cir. 1994) (alteration in original) (quoting *Ramsay*, 14 F.3d at

---

[2] The plaintiffs do not dispute that Dignity Health has established the remaining elements ((2), (3), and (5)) required for collateral estoppel to apply.

10

210). The issue that was previously litigated in my Order denying the Motion to Remand in *Flores I* was whether the healthcare defendants had been fraudulently joined. Here, the issue sought to be precluded is whether the same healthcare defendants have been fraudulently joined by the same plaintiffs, who assert the same causes of action as they did in *Flores I*. Therefore, I **FIND** that the issue sought to be precluded is identical to the one previously litigated. Accordingly, Dignity Health has established element (1) required for collateral estoppel to apply.

Next, the plaintiffs claim that collateral estoppel does not apply to a dismissal without prejudice because there has been no "valid and final judgment." Fourth Circuit precedent, however, says otherwise. In *Goldsmith v. Mayor & City Council of Balt.*, 987 F.2d 1064 (4th Cir. 1993), the Fourth Circuit stated that "a jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally-related claims still operates to bar relitigation of issues actually decided by that former judgment." *Id.* at 1069. The Fourth Circuit further clarified this principle in *Holland v. Kohn*, 12 F. App'x 160 (4th Cir. 2001) when it stated that, for collateral estoppel to apply, the prior cause of action "need not have been adjudicated on the merits, but the issue to which Appellees raise collateral estoppel must have been adjudicated on the merits." *Id.* at 166.

Here, regardless of whether the dismissal without prejudice in *Flores I* applied to the healthcare defendants or solely to the Ethicon defendants, the *issue* sought to be precluded was adjudicated on the merits. Namely, in my Order denying the Motion to Remand in *Flores I*, I determined that the healthcare defendants had been

fraudulently joined. This determination was subsequently affirmed by the Fourth Circuit on appeal. Therefore, my determination that the healthcare defendants had been fraudulently joined in *Flores I* constitutes a valid and final judgment *as to that issue*. Accordingly, I **FIND** that Dignity Health has established element (4) required for collateral estoppel to apply.

I have found that Dignity Health has established the disputed elements ((1) and (4)) for collateral estoppel to apply. The plaintiffs do not dispute that Dignity Health has established the remaining elements, and the evidence clearly establishes that those elements have been satisfied. Therefore, I **FIND** that collateral estoppel applies to my determination in *Flores I* that the healthcare defendants have been fraudulently joined. As such, the plaintiffs are precluded from relitigating that issue in this case.

### B. Statute of Limitations

Assuming, *arguendo*, that collateral estoppel does not apply to my previous determination that the healthcare defendants have been fraudulently joined, I would still find that the healthcare defendants have been fraudulently joined in this case because the plaintiffs' Complaint against the healthcare defendants is barred by California's applicable statute of limitations.

Although the Fourth Circuit has not directly addressed the issue, many federal courts consider a statute of limitations defense as a basis for finding fraudulent joinder. *See, e.g.*, *In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006) ("If a district court can discern, as a matter of law, that a cause of action is time-barred under state law,

it follows that the cause fails to present even a colorable claim against the non-diverse defendant."); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998) ("It is pellucid that by the time the complaint in question was filed . . . the statute of limitations had long since run . . . ."); *Parkway Imaging Ctr., Inc. v. Home Life Fin. Assurance Corp.*, No. 97–21024, 1999 WL 824441, at *6 (5th Cir. Sept. 27, 1999) ("We have previously held that should the defendant establish the existence of an affirmative defense to the plaintiff's state law claims, 'it necessarily follows that joinder was fraudulent, and the district court properly exercised its removal jurisdiction.'" (quoting *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 753 (5th Cir. 1996))); *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 691 (7th Cir. 1998) (finding fraudulent joinder when statute of limitations had run based on "sufficiently clear" facts presented); *Wages v. Johnson Reg'l Med. Ctr.*, No 2:12-cv-02258, 2013 WL 120888, at *1 (W.D. Ark. Jan. 9, 2013); *Pullin v. Lowe's Home Ctrs., Inc.*, No. 5:09cv740, 2009 WL 3246905, at *1–2 (N.D. Ohio Oct. 6, 2009); *Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 818 (N.D. W. Va. 2005) (using statute of limitations to find fraudulent joinder because it was not difficult to determine when it began running); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 949 (D. Md. 2004) ("[S]"uccessful fraudulent joinder/statute of limitations arguments occur in cases where the issue is fairly easy to determine either from the face of the complaint or with resort to limited additional evidence, while courts facing more ambiguous factual situations reject such arguments."); *Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1325 (M.D. Ala.

2003). Notably, California's statute of limitations defense in particular has been considered by other courts in determining fraudulent joinder. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009); *Ritchey*, 139 F.3d at 1318; *Riverdale Baptist Church*, 349 F. Supp. 2d at 950.

In California, the applicable statute of limitations is based on the "nature of the right sued upon and not the form of actin nor the relief demanded." *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606–07 (2011) (quoting *Hensler v. City of Glendale*, 8 Cal.4th 1, 22–23 (1994)). "What is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct." *Barton v. New United Motor Mfg., Inc.*, 43 Cal. App. 4th 1200, 1207 (1996).

Dignity Health contends that the proper statute of limitations for all of the plaintiffs' claims is California Code of Civil Procedure § 340.5, enacted as part of the Medical Injury Compensation Reform Act ("MICRA"). The statute provides that

> the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person.

Cal. Civ. Proc. § 340.5. The tolling provisions in the statute apply only to the three-year period. *Warren v. Schecter*, 57 Cal. App. 4th 1189, 1201 (1997) (noting that the one-year period cannot be tolled by fraud, concealment, or the presence of a foreign body). "[O]nce a patient knows, or by reasonable diligence should have known, that

14

he has been harmed through professional negligence, he has one year to bring his suit." *Gutierrez v. Mofid*, 39 Cal.3d 892, 896 (1984).

In this case, Mrs. Flores discovered, or reasonably should have discovered, her injury, at the latest, on July 21, 2011, when the TVT Device was removed. By that date, Mrs. Flores alleges that "the TVT Device had eroded into adjacent pelvic organs causing infection, hematuria and necrosis resulting in substantial pain, suffering emotional and mental distress." First Am. Compl. ¶ 16. Thus, for any claims to which MICRA applies, Mrs. Flores was required to bring suit by July 21, 2012, at the latest.

MICRA applies to actions involving the "professional negligence" of a "health care provider." *Id.* A health care provider is "any person licensed or certified pursuant to Division 2 . . . and any clinic, health dispensary, or health facility, licensed pursuant to Division 2." Cal. Civ. Proc. § 340.5(1). "Professional negligence" is defined as

> a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

Cal. Civ. Proc. § 340.5(2). Because a single set of facts can create multiple causes of action, such as battery, products liability, fraud, and breach of contract, "a plaintiff hoping to evade the restriction of MICRA may choose to assert *only* seemingly non-MICRA causes of action." *Smith v. Ben Bennett, Inc.*, 133 Cal. App. 4th 1507, 1514 (2005). Therefore, "when a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether

it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger MICRA." *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 353 (2008) (quoting *Smith*, 133 Cal. App. 4th at 1514).

MICRA applies to negligence and negligence-type cause of actions, but not intentional torts. *See id.* at 355; *Barris v. Cty. of Los Angeles*, 20 Cal.4th 101, 114–16 (1999) (noting that the Supreme Court of California has "not previously held that MICRA applies to intentional torts"). Any negligent act that occurs "in the rendering of services for which a provider is licensed" is professional negligence, regardless of the "degree of skill required." *Canister v. Emergency Ambulance Serv.*, 160 Cal. App. 4th 388, 404 (2008). Thus, California courts have applied MICRA to cases claiming negligence in the driving of an ambulance, *id.* at 392–93, 404–08, the improper securing of a patient to an X-ray table, *Bellamy v. Appellate Dep't*, 50 Cal. App. 4th 797, 805–08 (1996), and the failure of a doctor to report suspected child abuse. *David M.*, 131 Cal. App. 4th at 1277–78.

The First Amended Complaint alleges Count I (Negligence), Count II (Negligent Misrepresentation), and Count VIII (Loss of Consortium) against all defendants. The remaining counts are alleged against the Ethicon defendants only. Therefore, I will consider only Counts I, II, and VIII to determine whether there is

any possibility that the plaintiffs would be able to establish these claims against the healthcare defendants.[3]

### 1) Count I: Negligence

The plaintiffs allege that all defendants were negligent in "failing to warn or notify [Mrs. Flores] of the dangers, risks and hazards" associated with the TVT Device prior to its implantation, and continuing thereafter. First Am. Compl. ¶ 25. Thus, the plaintiffs' negligence claim is based on negligent failure to warn.

The plaintiffs' negligent failure to warn claim, as it pertains to the healthcare defendants, is based on professional negligence as defined by MICRA because it involves the decisions of the healthcare defendants to provide Mrs. Flores with a particular course of treatment that included the TVT Device. The decisions to use pelvic mesh to treat Mrs. Flores, to use a particular mesh product instead of others, and which risks to disclose to the patient in making that decision are at the core of the professional judgment that requires licensing for doctors, hospitals, and other healthcare facilities. *See Hedlund v. Superior Court*, 34 Cal.3d 695, 703–04 (1983) (holding that a psychiatrist's failure to warn of his patient's potential dangerousness was professional negligence because the diagnosis of the dangerous behavior "and the

---

[3] The court notes that the presently pending Motion to Dismiss was filed by Dignity Health/St. Mary Medical Center, and was not joined by the remaining healthcare defendant—Greater Long Beach Genito-Urinary Medical Group, Inc. However, before ruling on Dignity Health's Motion to Dismiss, I must first determine whether the court has subject matter jurisdiction in this case. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."). Furthermore, a finding of complete diversity between the parties, such that this court has subject matter jurisdiction in this case, requires a preliminary determination that *all* of the California-domiciled defendants (i.e., the healthcare defendants) have been fraudulently joined. Therefore, in determining fraudulent joinder, I will consider whether the plaintiffs could establish a cause of action against Dignity Health/St. Mary Medical Center *or* Greater Long Beach Genito-Urinary Medical Group, Inc.

appropriate steps necessary to protect the victim are not separate or severable, but together constitute the duty giving rise to the cause of action"); *Saxena v. Goffney*, 159 Cal. App. 4th 316, 324–25 (2008) (collecting informed consent cases and noting that such a claim "sounds in negligence" and "arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives"). Deciding to use a pelvic mesh product over other treatment methods, and how to advise the patient regarding the product's known risks, occurred "in the rendering of services" for which the defendants are licensed. *See Canister*, 160 Cal. App. 4th at 404.

Therefore, I **FIND** that MICRA applies to the plaintiffs' negligence claim against the healthcare defendants. Accordingly, the plaintiffs were required to bring this claim by July 21, 2012, at the latest.

### 2) *Count II: Negligent Misrepresentation*

Next, the plaintiffs allege that, "[p]rior to implantation of the [TVT Device] into Mrs. Flores' pelvic cavity, Mrs. Flores was told the Product was safe, hazard-free with only a history of success in treating said Plaintiff's medical condition(s)." First Am. Compl. ¶ 31. The plaintiffs further allege that these statements were not true, and the defendants had no reasonable basis for believing such statements to be true. *Id.* ¶¶ 33–34.

The plaintiffs' negligent misrepresentation claim, as it pertains to the healthcare defendants, is also based on professional negligence as defined by MICRA. Like the plaintiffs' negligent failure to warn claim, the negligent misrepresentation claim involves the decisions of the healthcare defendants to provide Mrs. Flores with

18

a particular course of treatment that included the TVT Device. *Saxena*, 159 Cal. App. 4th at 324–25 (collecting informed consent cases and noting that such a claim "sounds in negligence" and "arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives"). Deciding to use a pelvic mesh product over other treatment methods, and how to advise the patient regarding the product's known or reasonably knowable risks, occurred "in the rendering of services" for which the defendants are licensed. *See Canister*, 160 Cal. App. 4th at 404.

Therefore, I **FIND** that MICRA applies to the plaintiffs' negligent misrepresentation claim against the healthcare defendants. Accordingly, the plaintiffs were required to bring this claim by July 21, 2012, at the latest.

### 3) *Count VIII: Loss of Consortium*

Finally, Mr. Flores brings a claim against all defendants for loss of consortium. This claim is derivative of Mrs. Flores's claims. Thus, if Mrs. Flores's claims against the healthcare defendants are time-barred, Mr. Flores's claim against the healthcare defendants is also time-barred. *See Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1256 (2011).

### 4) *Conclusion*

The plaintiffs filed the Complaint in this case on June 26, 2013. The plaintiffs amended the Complaint on July 3, 2013, and added the healthcare defendants. Even using the earlier of these two dates (June 26, 2013) as the date on which the plaintiffs commenced the present action against the healthcare defendants (although they were not named in the original complaint), this date is nearly two years after the plaintiffs

reasonably should have discovered their injury (July 21, 2011), and nearly one year after the statute of limitations had run (July 21, 2012). Therefore, I **FIND** that the plaintiffs' claims against the healthcare defendants are barred by California's applicable statute of limitations.

### C. Equitable Tolling

The plaintiffs argue that their claims against the healthcare defendants are not time-barred because the statute of limitations was equitably tolled during the pendency of the *Flores I* case. Equitable tolling "is a judicially created, nonstatutory doctrine." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 99 (2008). It is "a creature of the judiciary's inherent power to formulate rules of procedure where justice demands it." *Id.* at 100 (internal quotation marks omitted).

> It is designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied. Where applicable, the doctrine will suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.

*Id.* at 99 (internal quotation marks omitted).

Under California law, "the doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *Id.* at 100 (brackets and internal quotation marks omitted); *see also Hu v. Silgan Containers Corp.*, 70 Cal. App. 4th 1261, 1270 (1999) ("In the majority of cases in which courts apply the equitable tolling doctrine, the plaintiff possesses several legal remedies, and reasonably and in good faith pursues one designed to lessen the extent of his or her injuries or damage."). Of particular relevance here, the Supreme Court of California

has held "that in an action which is in reality a continuance of the earlier action (commenced in time) involving the same parties, facts, and causes of action, and was promptly filed after entry of the judgment on the nonsuit, plaintiff should not be deprived of a trial on the merits and the running of the statute will be suspended." *Tannhauser v. Adams*, 31 Cal.2d 169, 177 (1947) (internal quotation marks omitted) (quoting *Bollinger v. Nat'l Fire Ins. Co.*, 25 Cal.2d 399 (1944)). Thus, in *Bollinger*, the Supreme Court applied the doctrine of equitable tolling to the plaintiff's second attempt to bring suit, even though the statute of limitations had run, "because (1) the trial court had erroneously granted the initial nonsuit; (2) dilatory tactics on the part of the defendant had prevented disposition of the first action in time to permit a second filing within the [limitations] period; and (3) the plaintiff had at all times proceeded in a diligent manner." *Hu*, 70 Cal. App. 4th at 1271 (citing *Bollinger*, 25 Cal.2d at 403–06).

"Later decisions of [the Supreme Court] have made it clear that the concurrence of the three factors present in *Bollinger* is essential to an application of the rule stated therein." *Wood v. Elling Corp.*, 20 Cal3d 353, 361 (1977). Thus, in *Neff v. New York Life Insurance Co.*, 30 Cal.2d 165 (1947), the Supreme Court declined to apply equitable tolling because the defendant had not engaged in dilatory or deceptive tactics. Again, in *Tannhauser*, the Supreme Court declined to apply the doctrine of equitable tolling because the plaintiff had not proceeded in a diligent manner. *Tannhauser*, 31 Cal.2d at 177–78.

In this case, none of the *Bollinger* factors required for the application of equitable tolling under California law are present. The first case, *Flores I*, did not proceed erroneously due to any error of the trial courts. There is no evidence, nor allegations by the plaintiffs, of dilatory tactics on the part of the defendants.

Moreover, the plaintiffs in this case have not proceeded in a diligent manner. This is evidenced by the fact that I dismissed the plaintiffs' claims in *Flores I* for their failure to file a PPF in accordance with my PTO. Thus, this case is similar to *Tannhauser*, where "[t]he first action brought by this plaintiff was not diligently pursued; it was dismissed for want of prosecution; plaintiff failed to secure a trial on the merits in that action not because of error of the court but because of his own (or his then attorney's) neglect." *Tannhauser*, 31 Cal.2d at 177–78. Accordingly, I reach the same conclusion here as did the Supreme Court of California in *Tannhauser*, and I decline to apply the doctrine of equitable tolling to the plaintiffs' claims.

## IV.  Conclusion

First, I found that collateral estoppel applies to my determination in *Flores I* that the healthcare defendants were fraudulently joined, such that the plaintiffs are precluded from relitigating that issue here. Alternatively, assuming *arguendo* that collateral estoppel does not apply to my prior determination of fraudulent joinder, I would still find that the healthcare defendants have been fraudulently joined in this case because the plaintiffs' claims against the healthcare defendants are barred by California's applicable statute of limitations. I declined to apply the doctrine of

equitable tolling to the plaintiffs' claims because I found that they have not satisfied the requirements for that equitable doctrine to apply under California law.

Thus, after resolving all issues of fact and law in the plaintiffs' favor, I **FIND** that there is no possibility that the plaintiffs can establish a cause of action against the healthcare defendants. Accordingly, I **FIND** that the healthcare defendants were fraudulently joined in this case. Even though Greater Long Beach Genito-Urinary Medical Group, Inc. did not join Dignity Health's Motion to Dismiss, the fraudulent joinder doctrine requires dismissal of all fraudulently-joined, nondiverse defendants in order to retain subject matter jurisdiction over the case. *See Mayes*, 198 F.3d at 461 (The fraudulent joinder doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, *dismiss the nondiverse defendants*, and thereby retain jurisdiction." (emphasis added)).

Therefore, pursuant to *Mayes*, it is **ORDERED** that the healthcare defendants (Dignity Health, St. Mary Medical Center, and Greater Long Beach Genito-Urinary Medical Group, Inc.) are **DISMISSED with prejudice**. It is further **ORDERED** that Dignity Health's Motion to Dismiss [ECF No. 38] is **GRANTED**. Finally, having ruled on the Motion to Dismiss without the need for a hearing, Dignity Health's Motion for Hearing [ECF No. 42] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:    June 25, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE